# EXHIBIT A

Case 3:24-cv-00998-MMH-PDB   Document 1-1   Filed 09/26/24   Page 2 of 37 PageID 7

16-2024-CC-014087-AXXX-MA Div: CC-E

# IN THE CIRCUIT COURT OF THE FOURTH JUDICIAL CIRCUIT IN AND FOR DUVAL COUNTY, FLORIDA
## CIVIL DIVISION

| | |
|---|---|
| **REBECCA JACOBSEN,** | **Case No.:** |
| **Plaintiff,** | |
| **v.** | |
| **SYNCHRONY BANK, MRS BPO, LLC, AND MONARCH RECOVERY MANAGEMENT, INC.,** | **JURY DEMAND** |
| **Defendants.** | |

## COMPLAINT

Plaintiff Rebecca Jacobsen, by and through the undersigned counsel, complains, states, and alleges damages for negligence and under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* ("FDCPA") and the Florida Consumer Collections Practices Act, Fla Statute 559.55, *et seq.* ("FCCPA") against defendants Synchrony Bank, MRS BPO, LLC, and Monarch Recovery Management, Inc., as follows:

### INTRODUCTION

1.     This action seeks to recover damages for negligence and violations of the FDCPA and the FCCPA.

ACCEPTED: DUVAL COUNTY, JODY PHILLIPS, CLERK, 08/22/2024 12:12:19 PM

2.     The FDCPA was enacted to protect citizens from such abuses by debt collectors, like the ones described in this Complaint, and to protect citizens like Plaintiff.  "There is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors. Abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy." 15 U.S.C. § 1692(a).

3.     The FDCPA protects consumers from abusive debt collection practices by regulating the conduct of debt collectors. *See Crawford v. LVNV Funding LLC*, 758 F.3d 1254, 1257 (11th Cir. 2014) (noting that "Congress passed the FDCPA in 1977 to stop the use of abusive, deceptive, and unfair debt collection practices by many debt collectors" (internal quotation marks omitted)). To enforce its provisions, the FDCPA provides consumers with a private right of action against debt collectors who violate the Act. *Id.* at 1258.

4.     The 11th Circuit applies the "least-sophisticated consumer" standard. *See LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1193, 1201 (11th Cir. 2010) (explaining that the least-sophisticated consumer standard applies to determine whether a debt collector has violated §§ 1692e or 1692f of the FDCPA).

5.     Under the foregoing standard, a debt collector violates § 1692e by making a representation in a letter that would be deceptive or misleading to the "least sophisticated" recipient of the letter. *Id*. at 1193–95.

2

6.      Likewise, a collection practice violates § 1692f if it would be unfair or unconscionable as applied to the "least sophisticated" debtor subjected to the practice. *Id*. at 1201.

7.      The least-sophisticated consumer standard is intended to protect "all consumers, the gullible as well as the shrewd." *Id.* at 1194 (internal quotation marks omitted).

8.      After Congress passed the FDCPA, the Florida State legislature decided it wanted to go even further to protect its citizens from the rampant abuses perpetrated by debt collectors and creditors. To this end, the Florida State legislature passed the FCCPA. The FCCPA is designed to protect consumers from harassment like the type described herein, and to protect consumers like the Plaintiff. "In the event of any inconsistency between any provision of this part and any provision of the federal act, the provision which is more protective of the consumer or debtor shall prevail." *Id*. at § 559.552.

## JURISDICTION AND VENUE

9.      This is an action for damages within the jurisdiction of this Court.

10.     This is an action for damages that exceeds Eight Thousand Dollars ($8,000.00), but does not exceed Fifty Thousand Dollars ($50,000.00), exclusive of interest, costs, and attorney's fees.

11.    This Court also has jurisdiction over the Plaintiff's claim pursuant to Section 86.011, Florida Statutes.

12.    Venue is also proper in Duval County, Florida pursuant to FL Stat. § 559.77(1) as a substantial part of the events or omissions giving rise to the claims occurred in this County and Plaintiff resided in this County at the time of the events.

13.    This Court has jurisdiction over defendants Synchrony Bank, MRS BPO, LLC, and Monarch Recovery Management, Inc. because they regularly transact business within this County, derive substantial revenue from services rendered in this County, have committed tortious acts within this County and have caused injury to persons within this County as described herein.

## PARTIES

14.    Plaintiff Rebecca Jacobsen ("Plaintiff") is an individual who is a citizen of the State of Florida residing in Duval County, Florida.

15.    Plaintiff is a natural person allegedly obligated to pay a debt.

16.    Plaintiff is a "consumer" as defined by the FDCPA and FCCPA.

17.    The alleged violations described in the Complaint with respect to Plaintiff occurred in Duval County, Florida.

18.    Defendant Synchrony Bank ("Synchrony") is a wholly owned subsidiary of Synchrony Financial, a consumer financial services company

headquartered in Stanford, Connecticut, doing business in the State of Florida with a location in Orlando, Florida.

19.    At all material times herein, Synchrony is a "person" subject to the FCCPA, Section 559.72.  *See* Fla. Stat. § 559.55(3); *Schauer v. General Motors Acceptance Corp.*, 819 So. 2d 809 (Fla. 4th DCA 2002).

20.    Defendant MRS BPO, LLC ("MRS") is a company existing under the laws of the State of New Jersey, with its principal place of business in Cherry Hill, New Jersey.

21.    MRS has transacted business within this state as is more fully set forth hereinafter in this Complaint.

22.    MRS regularly collects or attempts to collect debts asserted to be owed to others.

23.    MRS is regularly engaged, for profit, in the collection of debts allegedly owed by consumers.

24.    The principal purpose of MRS's business is the collection of such debts.

25.    MRS uses instrumentalities of interstate commerce, including telephones and the mails, in furtherance of its debt collection business.

26.    MRS is a "debt collector" as that term is defined by the Fla. Stat. § 559.55(5) and the 15 U.S.C. § 1692a(6).

27.    At all material times herein, MRS is a "person" subject to the FCCPA, Section 559.72.  *See* Fla. Stat. § 559.55(3); *Schauer v. General Motors Acceptance Corp*., 819 So. 2d 809 (Fla. 4th DCA 2002).

28.    At all material times herein, MRS's conduct, with respect to the debt complained of below, qualifies as "communication" as defined by the Fla. Stat. § 559.55 and the 15 U.S.C. § 1692a(2).

29.    Defendant Monarch Recovery Management, Inc. ("MRM") is a company existing under the laws of the State of Pennsylvania, with its principal place of business in Bensalem, Pennsylvania.

30.    MRM has transacted business within this state as is more fully set forth hereinafter in this Complaint.

31.    MRM regularly collects or attempts to collect debts asserted to be owed to others.

32.    MRM is regularly engaged, for profit, in the collection of debts allegedly owed by consumers.

33.    The principal purpose of MRM's business is the collection of such debts.

34.    MRM uses instrumentalities of interstate commerce, including telephones and the mails, in furtherance of its debt collection business.

35.    MRM is a "debt collector" as that term is defined by the Fla. Stat. § 559.55(5) and the 15 U.S.C. § 1692a(6).

36.    At all material times herein, MRM is a "person" subject to the FCCPA, Section 559.72.  *See* Fla. Stat. § 559.55(3); *Schauer v. General Motors Acceptance Corp.*, 819 So. 2d 809 (Fla. 4th DCA 2002).

37.    At all material times herein, MRM's conduct, with respect to the debt complained of below, qualifies as "communication" as defined by the Fla. Stat. § 559.55 and the 15 U.S.C. § 1692a(2).

38.    Synchrony, MRS, and MRM hereinafter are referred to as the "Defendants."

39.    All necessary conditions precedent to the filing of this action occurred or Defendants waived or excused the same.

## FACTUAL ALLEGATIONS

40.    Plaintiff maintained a personal credit card account with Synchrony.

41.    Due to financial difficulties, Plaintiff began to fall behind on payments owed on the account.

42.    Plaintiff retained attorneys to represent Plaintiff with respect to the Synchrony debt.

43.    On April 26, 2023, and May 30, 2023, Plaintiff's counsel notified Synchrony of its representation of Plaintiff concerning the alleged debt and

demanded that all further direct communications with Plaintiff concerning the alleged debt cease (the "Letters of Representation").

44.    The Letters of Representation set forth Plaintiff's attorneys' name and address.

45.    In fact, the Letters of Representation disputed the alleged debt.

46.    Synchrony did not provide Plaintiff with any validation of the alleged debt.

47.    Instead, thereafter, on an exact date known only to Synchrony and MRS, the alleged debt was transferred, assigned, or otherwise placed with Synchrony's agent, MRS, for the purposes of collection on behalf of Synchrony.

48.    Despite the Letters of Representation, in an effort to collect the alleged debt, MRS, on behalf of Synchrony, caused a letter dated August 20, 2023 (the "August Letter") to be sent to Plaintiff directly.

49.    Plaintiff received and read the August Letter.

50.    The August Letter was the initial communication from MRS regarding the alleged debt.

51.    Plaintiff's attorneys did not consent to Synchrony's and/or MRS's direct communication with Plaintiff.

52.    Synchrony and/or MRS did not send the August Letter to Plaintiff's attorney.

8

53.     Synchrony and/or MRS did not send any letters concerning the alleged debt to Plaintiff's attorney after Synchrony transferred, assigned, or otherwise placed the alleged debt with its agent, MRS.

54.     Synchrony and/or MRS did not attempt to communicate at all with Plaintiff's attorneys concerning the alleged debt after Synchrony transferred, assigned, or otherwise placed the alleged debt with its agent, MRS.

55.     It is industry practice for creditors to inform downstream entities, including debt collectors, of attorney representation letters and/or cease and desist letters received from consumers' attorneys.

56.     It is industry practice, when debts are placed with downstream entities, including debt collectors, that such debts are identified as subject to attorney representation letters and/or cease and desist letters.

57.     It is industry practice, when debts are placed in bulk portfolios to downstream entities, including debt collectors, that such portfolios are identified, either explicitly, or through an indicator in the portfolio's file name, as containing accounts that are subject to attorney representation letters and/or cease and desist letters.

58.     Synchrony and MRS had actual notice of the Letters of Representation.

59.     MRS had actual notice of the Letters of Representation either from the placement file or through a portal provided to MRS by Synchrony, which contains

account level documentation.

60.    Alternatively, Synchrony and MRS were willfully blind to the fact that the alleged debt was subject to the Letters of Representation.

61.    Alternatively, Synchrony and MRS were negligent and/or lack sufficient policies and procedures in place to identify alleged debts that are subject to attorney representation letters and/or cease and desist letters.

62.    Synchrony and MRS have a pattern and practice of contacting consumers directly in attempts to collect alleged debts despite having actual notice of attorney representation letters and/or cease and desist letters related to the alleged debts.

63.    Synchrony and MRS have a pattern and practice of contacting consumers directly in attempts to collect alleged debts despite there being attorney representation letters and/or cease and desist letters from consumers' attorneys related to the alleged debts.

64.    Under § 1692g(a) of the FDCPA, within five days of an initial communication with a consumer, a debt collector must provide a written notice that contains relevant information about the alleged debt and how to dispute it.

65.    Pursuant to the FDCPA § 1692g(a), the debt collector must:

Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial

communication or the consumer has paid the debt, send the consumer a written notice containing—

(1) the amount of the debt;

(2) the name of the creditor to whom the debt is owed;

(3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

(4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

(5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

66.     Pursuant to Regulation F of 12 CFR § 1006.34(b)(5) "Validation period means the period starting on the date that a debt collector provides the validation information required by paragraph (c) of this section and ending 30 days after the consumer receives or is assumed to receive the validation information. For purposes of determining the end of the validation period, the debt collector may assume that a consumer receives the validation information on any date that is at least five days (excluding legal public holidays identified in 5 U.S.C. 6103(a), Saturdays, and Sundays) after the debt collector provides it."

67.     The August Letter states, in the relevant part, "**Call or write to us by**

11

**09/29/2023, to dispute all or part of the debt.** If you do not, we will assume that our information is correct."

68.    The August Letter provided Plaintiff a deadline of September 29, 2023, to dispute the alleged debt, request validation, and/or request the name and address of the original creditor.

69.    Upon information and belief, the August Letter was not mailed on August 20, 2023, a Sunday.

70.    Upon information and belief, the August Letter was mailed on a date later than August 20, 2023.

71.    Upon information and belief, the deadline for Plaintiff to dispute the alleged debt and/or request validation is not September 29, 2023.

72.    Upon information and belief, the deadline for Plaintiff to dispute the alleged debt and/or request validation is a later date.

73.    The August Letter provides a dispute and validation deadline that is contrary to the Validation Notice of the FDCPA.

74.    Pursuant to the 15 U.S.C. § 1692g(b), in the relevant part, "…Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor."

75.    By providing a validation deadline date of September 29, 2023, MRS

overshadowed Plaintiff's rights.

76.    By providing a validation deadline date of September 29, 2023, MRS does not provide Plaintiff the full thirty days.

77.    By providing a validation deadline date of September 29, 2023, MRS shortened the requisite validation period.

78.    Plaintiff became confused and was misled by the August Letter because the alleged debt was previously disputed.

79.    Thereafter, Plaintiff's counsel notified MRS again of its representation of Plaintiff concerning the alleged debt and demanded that all further direct communications with Plaintiff concerning the alleged debt cease (the "Additional Letter of Representation").

80.    Upon information and belief, the contract between MRS and Synchrony requires MRS to notify Synchrony of all letters of representation and cease and desists received regarding a Synchrony debt, whether oral or written.

81.    Upon information and belief, Synchrony performs regular monitoring and audits of the debt collectors it transfers, assigns, or places debts with to ensure compliance with its contract and operational manual.

82.    Upon information and belief, MRS notified Synchrony of the Additional Letter of Representation.

83.    The knowledge of Synchrony's agents is imputed to Synchrony.

84.     Thereafter, on an exact date known only to Synchrony and MRM, the alleged debt was transferred, assigned, or otherwise placed with Synchrony's agent, MRM, for the purposes of collection on behalf of Synchrony.

85.     Despite the Letters of Representation and Additional Letter of Representation, in an effort to collect the alleged debt, MRM, on behalf of Synchrony, caused an undated letter (the "Undated Letter") to be sent to Plaintiff directly.

86.     Plaintiff received and read the Undated Letter.

87.     The Undated Letter was the initial communication received from MRM regarding the alleged debt.

88.     Plaintiff's attorneys did not consent to Synchrony's and/or MRM's direct communication with Plaintiff.

89.     Synchrony and/or MRM did not send the Undated Letter to Plaintiff's attorney.

90.     Synchrony and/or MRM did not send any letters concerning the alleged debt to Plaintiff's attorney after Synchrony transferred, assigned, or otherwise placed the alleged debt with its agent, MRM.

91.     Synchrony and/or MRM did not attempt to communicate at all with Plaintiff's attorneys concerning the alleged debt after Synchrony transferred, assigned, or otherwise placed the alleged debt with its agent, MRM.

92.    It is industry practice for creditors to inform downstream entities, including debt collectors, of attorney representation letters and/or cease and desist letters received from consumers' attorneys.

93.    It is industry practice, when debts are placed with downstream entities, including debt collectors, that such debts are identified as subject to attorney representation letters and/or cease and desist letters.

94.    It is industry practice, when debts are placed in bulk portfolios to downstream entities, including debt collectors, that such portfolios are identified, either explicitly, or through an indicator in the portfolio's file name, as containing accounts that are subject to attorney representation letters and/or cease and desist letters.

95.    Synchrony and MRM had actual notice of the Letters of Representation and the Additional Letter of Representation.

96.    MRM had actual notice of the Letters of Representation and the Additional Letter of Representation either from the placement file or through a portal provided to MRM by Synchrony, which contains account level documentation.

97.    Alternatively, Synchrony and MRM were willfully blind to the fact that the alleged debt was subject to the Letters of Representation and the Additional Letter of Representation.

98.    Alternatively, Synchrony and MRM were negligent and/or lack

15

sufficient policies and procedures in place to identify alleged debts that are subject to attorney representation letters and/or cease and desist letters.

99.    Synchrony and MRM have a pattern and practice of contacting consumers directly in attempts to collect alleged debts despite having actual notice of attorney representation letters and/or cease and desist letters related to the alleged debts.

100.    Synchrony and MRM have a pattern and practice of contacting consumers directly in attempts to collect alleged debts despite there being attorney representation letters and/or cease and desist letters from consumers' attorneys related to the alleged debts.

101.    The Undated Letter, in the relevant part, stated, "As of May 29, 2023 you owed," then provided an amount of $2,282.89.

102.    Then, the letter stated, "Between May 29, 2023 and today," then listed the amount of interest, fees, payments, and credits.

103.    Plaintiff was misled as to the status of the subject debt, for the letter was not associated with a particular date.

104.    In light of the fact that the letter was undated, Plaintiff was confused what date is "today."

105.    It is standard and common practice to date letters, especially those involving official or financial matters.

106.   Any letter that lacks a date appears to be illegitimate.

107.   Consumers cannot make a decision to pay an alleged debt, without trusting the debt collector, such as MRM.

108.   Failing to date the letter makes MRM's letter appear incorrect, inaccurate, misleading, confusing, and/or deceptive, triggering the consumer to question the legitimacy of debt collector's attempts to collect the alleged debt.

109.   Failure of MRM to date the letter, but still attempt to collect the alleged debt, is inconsistent and out of character for legitimate debt collection practices, making a consumer believe there is something nefarious at play.

110.   MRM's failure to date the letter, which amounts to an intentional or negligent omissions, raises suspicion regarding its debt collection practice in general.

111.   Under § 1692g(a) of the FDCPA, within five days of an initial communication with a consumer, a debt collector must provide a written notice that contains relevant information about the alleged debt and how to dispute it.

112.   Pursuant to the FDCPA § 1692g(a), the debt collector must:

> Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—
>
> (1) the amount of the debt;

(2) the name of the creditor to whom the debt is owed;

(3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

(4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

(5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

113.    Pursuant to Regulation F of 12 CFR § 1006.34(b)(5) "Validation period means the period starting on the date that a debt collector provides the validation information required by paragraph (c) of this section and ending 30 days after the consumer receives or is assumed to receive the validation information. For purposes of determining the end of the validation period, the debt collector may assume that a consumer receives the validation information on any date that is at least five days (excluding legal public holidays identified in 5 U.S.C. 6103(a), Saturdays, and Sundays) after the debt collector provides it."

114.    The Undated Letter states, in the relevant part, "**Call or write to us by March 4, 2024, to dispute all or part of the debt.** If you do not, we will assume that our information is correct."

18

115.   The Undated Letter provided Plaintiff a deadline of March 4, 2024, to dispute the alleged debt, request validation, and/or request the name and address of the original creditor.

116.   Upon information and belief, the deadline for Plaintiff to dispute the alleged debt and/or request validation is not March 4, 2024, as the Undated Letter is not dated.

117.   Upon information and belief, the deadline for Plaintiff to dispute the alleged debt and/or request validation is a later date as the Undated Letter is not dated.

118.   The Undated Letter provides a dispute and validation deadline that is contrary to the Validation Notice of the FDCPA.

119.   Pursuant to the 15 U.S.C. § 1692g(b), in the relevant part, "…Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor."

120.   By providing a validation deadline date of March 4, 2024, MRM overshadowed Plaintiff's rights.

121.   By providing a validation deadline date of March 4, 2024, MRM does not provide Plaintiff the full thirty days.

122.   By providing a validation deadline date of March 4, 2024, MRM

shortened the requisite validation period.

123.   Plaintiff became confused and was misled by the Undated Letter because the alleged debt was previously disputed.

124.   Synchrony is liable for the agents it retains to act on its behalf.

125.   The acts of Defendants as described in this Complaint were performed by Defendants or on Defendants' behalf by their owners, officers, agents, and/or employees acting within the scope of their actual or apparent authority.  As such, all references to Defendants in this Complaint shall mean Defendants or their owners, officers, agents, and/or employees.

126.   Defendants' conduct as described in this Complaint was willful, with the purpose to either harm Plaintiff or with reckless disregard for the harm to Plaintiff that could result from Defendants' conduct.

127.   Plaintiff justifiably fears that, absent this Court's intervention, Defendants will continue to use abusive, deceptive, unfair, and unlawful means in their attempts to collect the alleged debt and other alleged debts.

128.   Plaintiff justifiably fears that, absent this Court's intervention, Defendants will ultimately cause Plaintiff unwarranted economic harm.

129.   Plaintiff justifiably fears that, absent this Court's intervention, Defendants will ultimately cause Plaintiff unwarranted harm to Plaintiff's credit rating.

130.   Plaintiff justifiably fears that, absent this Court's intervention, Defendants will ultimately cause Plaintiff to be sued.

131.   A favorable decision herein would serve to deter Defendants from further similar conduct.

### - FIRST CAUSE OF ACTION -
### Violation of 15 U.S.C. §§ 1692c(a)(2) and 1692c(c)

132.   Plaintiff repeats and realleges paragraphs 1-63, 79-100, and 124 to 131 as if fully restated herein.

133.   Plaintiff is a "consumer" as that term defined by the FDCPA.

134.   MRS is a "debt collector" as that term is defined by the FDCPA.

135.   MRM is a "debt collector" as that term is defined by the FDCPA.

136.   The alleged debt is a "debt" as that term is defined by the FDCPA.

137.   The August Letter is a "communication" as that term is defined by the FDCPA.

138.   The Undated Letter is a "communication" as that term is defined by the FDCPA.

139.   The actions described herein constitute "an attempt to collect a debt" or "were taken in connection with an attempt to collect a debt" within the meaning of the FDCPA.

140.   15 U.S.C. § 1692c(a)(2), titled "Communication with the Consumer Generally," prohibits a debt collector from communicating with a consumer in

connection with the collection of any debt "if the debt collector knows the consumer is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address, unless the attorney fails to respond within a reasonable period of time to a communication from the debt collector or unless the attorney consents to direct communication with the consumer."

141. As described herein, MRS violated 15 U.S.C. § 1692c(a)(2).

142. As described herein, MRM violated 15 U.S.C. § 1692c(a)(2).

143. A violation of 15 U.S.C. § 1692c(a)(2) has a close relationship to an invasion of privacy.

144. A violation of Section 15 U.S.C. § 1692c(a)(2) is an invasion of privacy.

145. MRS invaded Plaintiff's privacy.

146. MRM invaded Plaintiff's privacy.

147. 15 U.S.C. § 1692c(c), titled "Ceasing Communication," prohibits a debt collector, subject to certain exceptions not relevant here, from communicating with a consumer in connection with the collection of any debt "[i]f a consumer notifies a debt collector in writing . . . that the consumer wishes the debt collector to cease further communication with the consumer."

148. 15 U.S.C. § 1692c(c) further states, "[i]f such notice from the consumer is made by mail, notification shall be complete upon receipt."

149. As described herein, MRS violated 15 U.S.C. § 1692c(c).

150. As described herein, MRM violated 15 U.S.C. § 1692c(c).

151. A violation of 15 U.S.C. § 1692c(c) has a close relationship to an intrusion upon the rights to solitude and seclusion.

152. A violation of 15 U.S.C. § 1692c(c) is an intrusion upon the rights to solitude and seclusion.

153. MRS intruded upon Plaintiff's rights to solitude and seclusion.

154. MRM intruded upon Plaintiff's rights to solitude and seclusion.

155. A violation of 15 U.S.C. § 1692c(c) also has a close relationship to interference with the attorney-client relationship.

156. A violation of Section 1692c(c) is an interference with the attorney-client relationship.

157. MRS interfered with Plaintiff's and her attorney's attorney-client relationship.

158. MRM interfered with Plaintiff's and her attorney's attorney-client relationship.

159. For the foregoing reasons, MRS and MRM violated 15 U.S.C. §§ 1692c(a)(2) and 1692c(c) and are each liable to Plaintiff therefor.

## - SECOND CAUSE OF ACTION -
## Violation of § 559.72(18) of the FCCPA

160.    Plaintiff repeats and realleges paragraphs 1-63, 79-100, and 124 to 131 as if fully restated herein.

161.    The Plaintiff is a "consumer" as that term defined by the FCCPA.

162.    MRS is a "debt collector" as that term is defined by the FCCPA.

163.    MRS is a "person" as that term is defined by the FCCPA.

164.    MRM is a "debt collector" as that term is defined by the FCCPA.

165.    MRM is a "person" as that term is defined by the FCCPA.

166.    Synchrony is a "person" as that term is defined by the FCCPA.

167.    The money sought from Plaintiff is a "debt" as that term is defined by the FCCPA.

168.    The August Letter is a "communication" as that term is defined by the FCCPA.

169.    The Undated Letter is a "communication" as that term is defined by the FCCPA.

170.    The actions described herein constitute "an attempt to collect a debt" or "were taken in connection with an attempt to collect a debt" within the meaning of the FCCPA.

171.    Section 559.72(18) of the FCCPA states that a creditor shall not: *"Communicate with a debtor if the person knows that the debtor is represented by*

24

*an attorney with respect to such debt and has knowledge of, or can readily ascertain,*

*such attorney's name and address…"*

172.   As described herein, Defendants violated Section 559.72(18) of the FCCPA.

173.   Defendants' violation of § 559.72(18) of the FCCPA renders them liable to Plaintiff for damages, costs, and reasonable attorneys' fees.

**WHEREFORE**, Plaintiff respectfully requests this Court to enter a judgment against Defendants as follows:

    a.   Awarding statutory damages as provided by Fla. Stat. § 559.77;

    b.   Awarding costs and attorneys' fees;

    c.   Any other and further relief as this Court deems just and equitable.

<u>**- THIRD CAUSE OF ACTION -**</u>
<u>**NEGLIGENCE AND NEGLIGENCE PER SE**</u>

174.   Plaintiff repeats and realleges paragraphs 1-63, 79-100, and 124 to 131 as if fully restated herein.

175.   Violation of a statute that imposes a duty of care constitutes negligence per se.

176.   Defendants owed Plaintiff a duty, or obligation, recognized by law.

177.   The FDCPA and FCCPA creates a standard of care because it was designed to protect consumers like Plaintiff from the type of harm which occurred here and provides for a private right of action.

178.   Plaintiff is within the class of persons protected by the FDCPA and FCCPA.

179.   As previously set forth, Defendants' conduct violated the FDCPA and FCCPA, and therefore breached the duty imposed by the statutory standard and constitutes negligence per se.

180.   Independent of the FDCPA and FCCPA, creditors and debt collectors owe debtors a duty of reasonable care in the collection of debts.

181.   Defendants owed a duty to Plaintiff to perform its attempted collection of Plaintiff 's alleged debt with reasonable care.

182.   Defendants owed a duty to Plaintiff to exercise reasonable care in contacting a represented consumer.

183.   Defendants owed a duty to Plaintiff to exercise reasonable care in contacting a consumer who previously issued a cease-and-desist direction.

184.   Defendants owed a duty to Plaintiff not to invade Plaintiff's privacy.

185.   Defendants owed a duty to Plaintiff not to intrude upon Plaintiff's rights to solitude and seclusion.

186.   Defendants owed a duty to Plaintiff not to interfere with Plaintiff and Plaintiff's attorney's attorney-client relationship.

187.   As described herein, Defendants breached these duties.

188.   As a direct and proximate result of Defendants' negligence and

negligence per se, Plaintiff suffered compensable harm and is entitled to recover actual, treble, exemplary, and punitive damages.

## - FOURTH CAUSE OF ACTION -
### Violation of 15 U.S.C. §§ 1692g(a) and 1692g(b)

189.  Plaintiff repeats and realleges paragraphs 1-28, 38-39, 40-41, 49-50, 64-78, and 124-131 as if fully restated herein.

190.  The Plaintiff is a "consumer" as that term defined by the FDCPA.

191.  MRS is a "debt collector" as that term is defined by the FDCPA.

192.  The money sought from Plaintiff is a "debt" as that term is defined by the FDCPA.

193.  The August Letter is a "communication" as that term is defined by the FDCPA.

194.  The actions described herein constitute "an attempt to collect a debt" or "were taken in connection with an attempt to collect a debt" within the meaning of the FDCPA.

195.  15 U.S.C. § 1692g provides that within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing certain enumerated information.

196.  15 U.S.C. § 1692g(a)(3) provides that the written notice must contain a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector.

197.  The August Letter provides a dispute and validation deadline that is contrary to the validation notice of the FDCPA.

198.  By providing a validation deadline date of September 29, 2023, MRS overshadowed Plaintiff's rights.

199.  By providing a validation deadline date of September 29, 2023, MRS does not provide Plaintiff the full thirty days.

200.  By providing a validation deadline date of September 29, 2023, MRS shortened the requisite validation period.

201.  As such, MRS did not accurately set forth the deadline for Plaintiff to dispute the alleged debt as required by 15 U.S.C. § 1692g(a)(3).

202.  Pursuant to the 15 U.S.C. § 1692g(b), in relevant part, "…Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor."

203.  Pursuant to Regulation F of 12 CFR § 1006.34(b)(5) "Validation period means the period starting on the date that a debt collector provides the validation

information required by paragraph (c) of this section and ending 30 days after the consumer receives or is assumed to receive the validation information. For purposes of determining the end of the validation period, the debt collector may assume that a consumer receives the validation information on any date that is at least five days (excluding legal public holidays identified in 5 U.S.C. 6103(a), Saturdays, and Sundays) after the debt collector provides it."

204.   By providing a concrete deadline, not taking into consideration the FDCPA validation period, as well as 12 CFR § 1006.34(b)(5), MRS has shortened the requisite validation period and overshadowed Plaintiff's rights.

205.   For the foregoing reasons, MRS violated 15 U.S.C. §§ 1692g, 1692g(a)(3), and 1692g(b), and is liable to Plaintiff therefor.

## - FIFTH CAUSE OF ACTION -
## Violation of 15 U.S.C. §§ 1692g(a) and 1692g(b)

206.   Plaintiff repeats and realleges paragraphs 1-19, 29-41, 84-87, and 111-131 as if fully restated herein.

207.   The Plaintiff is a "consumer" as that term defined by the FDCPA.

208.   MRM is a "debt collector" as that term is defined by the FDCPA.

209.   The money sought from Plaintiff is a "debt" as that term is defined by the FDCPA.

210.   The Undated Letter is a "communication" as that term is defined by the FDCPA.

29

211.   The actions described herein constitute "an attempt to collect a debt" or "were taken in connection with an attempt to collect a debt" within the meaning of the FDCPA.

212.   15 U.S.C. § 1692g provides that within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing certain enumerated information.

213.   15 U.S.C. § 1692g(a)(3) provides that the written notice must contain a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector.

214.   The Undated Letter provides a dispute and validation deadline that is contrary to the validation notice of the FDCPA.

215.   By providing a validation deadline date of March 4, 2024 MRM overshadowed Plaintiff's rights.

216.   By providing a validation deadline date of March 4, 2024, MRM does not provide Plaintiff the full thirty days.

217.   By providing a validation deadline date of March 4, 2024, MRM shortened the requisite validation period.

218.   As such, MRM did not accurately set forth the deadline for Plaintiff to dispute the alleged debt as required by 15 U.S.C. § 1692g(a)(3).

219.   Pursuant to the 15 U.S.C. § 1692g(b), in relevant part, "…Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor."

220.   Pursuant to Regulation F of 12 CFR § 1006.34(b)(5) "Validation period means the period starting on the date that a debt collector provides the validation information required by paragraph (c) of this section and ending 30 days after the consumer receives or is assumed to receive the validation information. For purposes of determining the end of the validation period, the debt collector may assume that a consumer receives the validation information on any date that is at least five days (excluding legal public holidays identified in 5 U.S.C. 6103(a), Saturdays, and Sundays) after the debt collector provides it."

221.   By providing a concrete deadline, not taking into consideration the FDCPA validation period, as well as 12 CFR § 1006.34(b)(5), MRM has shortened the requisite validation period and overshadowed Plaintiff's rights.

222.   For the foregoing reasons, MRM violated 15 U.S.C. §§ 1692g, 1692g(a)(3), and 1692g(b), and is liable to Plaintiff therefor.

## - SIXTH CAUSE OF ACTION -
## Violation of 15 U.S.C. §§ 1692d, 1692e, 1692e(2)(A), and 1692e(10)

223.    Plaintiff repeats and realleges paragraphs 1-19, 29-41, 84-87, 101-110, 124-131 as if fully restated herein.

224.    The Plaintiff is a "consumer" as that term defined by the FDCPA.

225.    MRM is a "debt collector" as that term is defined by the FDCPA.

226.    The money sought from Plaintiff is a "debt" as that term is defined by the FDCPA.

227.    The Undated Letter is a "communication" as that term is defined by the FDCPA.

228.    The actions described herein constitute "an attempt to collect a debt" or "were taken in connection with an attempt to collect a debt" within the meaning of the FDCPA.

229.    15 U.S.C. § 1692d provides, generally, that a debt collector may not engage in conduct the natural consequence of which is to harass, abuse, and/or oppress.

230.    15 U.S.C. § 1692e provides, generally, that a debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt.

231.    15 U.S.C. § 1692e(2)(A) prohibits the false representation of the character, amount, or legal status of any debt.

232.   15 U.S.C. § 1692e(10) prohibits the use of any false representation or deceptive means to collect or attempt to collect any debt.

233.   Plaintiff was misled as to the status of the subject debt, for the Undated Letter was not associated with a particular date.

234.   In light of the fact that the Undated Letter was not dated, Plaintiff was confused what date is "today."

235.   It is standard and common practice to date letters, especially those involving official or financial matters.

236.   Any letter that lacks a date appears to be illegitimate.

237.   Consumers cannot make a decision to pay an alleged debt, without trusting the debt collector, such as MRM.

238.   Failing to date the letter makes MRM's letter appear incorrect, inaccurate, misleading, confusing, and/or deceptive, triggering the consumer to question the legitimacy of debt collector's attempts to collect the alleged debt.

239.   Failure of MRM to date the letter, but still attempt to collect the alleged debt, is inconsistent and out of character for legitimate debt collection practices, making a consumer believe there is something nefarious at play.

240.   MRM's failure to date the letter, which amounts to an intentional or negligent omissions, raises suspicion regarding its debt collection practice in general.

241.    For the foregoing reasons, MRM violated 15 U.S.C. §§ 1692d, 1692e, 1692e(2)(A), and 1692e(10) and is liable to Plaintiff therefor.

## - SEVENTH CAUSE OF ACTION -
## NEGLIGENCE PER SE

242.    Plaintiff repeats and realleges paragraphs 1-19, 29-41, 84-87, and 101-131 as if fully restated herein.

243.    Violation of a statute that imposes a duty of care constitutes negligence per se.

244.    MRM owed Plaintiff a duty, or obligation, recognized by law.

245.    The FDCPA create a standard of care because it was designed to protect consumers like Plaintiff from the type of harm which occurred here and provides for a private right of action.

246.    Plaintiff is within the class of persons protected by the FDCPA.

247.    As previously set forth, MRM's conduct violated the FDCPA and therefore breached the duty imposed by the statutory standard and constitutes negligence per se.

248.    As a direct and proximate result of MRM's negligence per se, Plaintiff suffered compensable harm and is entitled to recover actual, treble, exemplary, and punitive damages.

## JURY DEMAND

249.    Plaintiff hereby demands a trial of this action by jury.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests judgment be entered as follows:

    a.  Finding MRS's actions violate the FDCPA; and

    b.  Finding MRM's actions violate the FDCPA; and

    c.  Awarding damages to Plaintiff against MRS and MRM, pursuant to 15 U.S.C. § 1692k; and

    d.  Awarding Plaintiff's attorneys' fees pursuant to 15 U.S.C. § 1692k, calculated on a "lodestar" basis; and

    e.  Awarding the costs of this action to Plaintiff, pursuant to 15 U.S.C. § 1692k; and

    f.  Finding Synchrony's actions violate the FCCPA: and

    g.  Finding MRS's actions violate the FCCPA; and

    h.  Finding MRM's actions violate the FCCPA; and

    i.  Awarding damages against each Defendant pursuant to § 559.77(2) of the FCCPA; and

    j.  Awarding Plaintiff punitive damages to be determined at trial, for the sake of example and punishing Defendants for their malicious conduct, pursuant to § 559.77(2) of the FCCPA; and

    k.  The costs of this action and attorneys' fees awarded against Defendants pursuant to Florida Stat. § 559.77(2); and

    l.  Actual, treble, exemplary, and punitive damages on Plaintiff's negligence causes of action;

    m.  Awarding pre-judgment interest and post-judgment interest to Plaintiff; all together with

n. Such other and further relief that the Court determines is just and proper.

Dated: August 15, 2024

Respectfully Submitted,

/s/:_ *Jason Tenenbaum*_____
Jason Tenenbaum, Esq.
Tenenbaum Law Group, PLLC
1600 Ponce De Leon Blvd.
10th Floor
Coral Gables, FL 33134
PH: (305) 402-9529
FAX: (786) 292-1948

*Attorneys for Plaintiff*